UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| EL WANDA PEARL RAY,<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF CORRECTIONS, et al.,<br><br>Defendants. | <br><br><br><br>Case No. 25-cv-13395<br><br>Honorable Robert J. White |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' PARTIAL MOTION TO DISMISS (ECF No. 9)**

Plaintiff El Wanda Pearl Ray sued Defendants the Michigan Department of Corrections (MDOC) and a number of its employees for employment discrimination. (ECF No. 8). The individual defendant employees include Fredeane Artis, Jason E. LaVigne, Lori Fouty, Jonathan Denison, Marniece Brownlee, Chad Williams, and Gary May. (ECF No. 8, PageID.49). Ray brought a retaliation claim (Count I) and a hostile work environment claim (Count II) against MDOC under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.* (ECF No. 8, PageID.55–56). Ray sued the individual defendants for retaliation and discrimination under the Elliot-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2101 *et seq.* (Count III). (*Id.* at PageID.56).

The Defendants moved to partially dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) and for a more definite statement under Federal Rule of Civil Procedure 12(e). (ECF No. 9, PageID.96). Ray opposed the motion. (ECF No. 11). For the reasons explained below, the Court will grant in part and deny in part Defendants' partial motion to dismiss.

## I. Background

Ray is a Black/African American woman and long-time MDOC Corrections Officer assigned to Thumb Correctional Facility (TCF). (ECF No. 8, PageID.50). Ray has worked as a Corrections Officer for almost two decades and has had a distinguished career. (*Id.*). In fact, in 2018, Ray was voted MDOC's Corrections Officer of the Year. (*Id.* at PageID.51). Defendants include Ray's employer, MDOC, as well as her supervisors and co-workers. (*Id.* at PageID.50).

Ray alleged that she began to experience harassment and differential treatment sometime in 2022. (*Id.* at PageID.51). To start, on September 13, 2022, Defendant Brownlee, a Lieutenant at TCF, reportedly entered Ray's office without knocking, despite the door being closed. (*Id.*). While in Ray's office, Brownlee removed personal photos, "started grunting," and kicked furniture. (*Id.*). Next, Brownlee and Defendant Denison, a Captain at TCF, filed false complaints against Ray accusing her of using the derogatory term "midget." (*Id.*). The complaints resulted in an investigation and disciplinary action against Ray. (*Id.*). In addition, Ray claimed that

she was treated differently than other similarly situated white or male officers. (*Id.* at PageID.52). That is, Ray was subject to public questioning regarding her medical accommodation, and her credibility was challenged in front of staff. (*Id.*).

The discriminatory treatment and retaliation continued to escalate from there. (*Id.*). On May 30, 2025, Ray resigned as the Discriminatory Harassment Counselor due to management's refusal to intervene in the harassment she faced. (*Id.*). And Denison and Defendant Fouty, Ray's supervisor, allegedly coordinated discipline outside of Human Resource procedures that embarrassed and intimidated Ray. (*Id.*). Things only became worse after Ray filed a charge with the Equal Employment Opportunity Commission (EEOC). (*Id.* at PageID.53). Defendants Artis (the Warden) and Lavigne (the Acting Deputy Warden) removed Ray from the Recruitment Team, citing prior discipline as the reason. (*Id.*). Concerningly, Defendant May, another Corrections Officer at TCF, indicated to Ray that she was being removed from the Recruitment Team before Ray received formal notice. (*Id.*). Ray asserted that May's advanced knowledge raised questions of impropriety given that it involved confidential employment information. (*Id.*).

Although Ray submitted several complaints against Brownlee based on the way she was treated, no action was taken to address the situation. (*Id.* at PageID.51–

52; ECF No. 8-2; ECF No. 8-3).[1] And Ray alleged that any complaints she made were "routed through the same supervisory chain, reviewed by colleagues and subordinates of the accused individuals, and resolved without meaningful fact-finding." (ECF No. 8, PageID.53). Overall, the Defendants did not address Ray's concerns. (*Id.* at PageID.52–55).

## II. Legal Standard

A defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In deciding the motion, courts must "construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001).

Under Federal Rule of Civil Procedure 12(e), "[a] party may move for a more definite statement of a pleading" if a responsive pleading is allowed and the original

[1] Courts may consider the "[c]omplaint and any exhibits attached thereto" in resolving a motion to dismiss. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

pleading is "so vague or ambiguous" that the moving party "cannot reasonably prepare a response." "Federal courts generally disfavor motions for more definite statements," however, and will only grant them when the pleading is "so excessively vague and ambiguous as to be unintelligible" and otherwise prejudices the moving party in responding. *Blick v. Ann Arbor Pub. Sch. Dist.*, No. 19-12127, 2021 WL 10132110, at *3 (E.D. Mich. Sept. 30, 2021) (citation omitted). "If the complaint meets the notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, the motion should be denied." *Id.* Ultimately, "[w]hether to grant a motion for a more definite statement is a matter within the discretion of the trial court." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1377 (3ed.).

## III. Analysis

Defendants moved to partially dismiss Ray's complaint on the following grounds. First, Ray's hostile work environment claim fails as a matter of law because Ray did not allege severe or pervasive harassment nor did she link the harassment to her protected class. (ECF No. 9, PageID.110–16). Second, Michigan law requires Ray to provide notice of intent to file suit before pursuing any state law claim against the state, so any claims that Ray did not raise that occurred before the statute's six-month deadline are foreclosed. (*Id.* at PageID.117–21). Third, the Court must dismiss any retaliation claims under ELCRA against Defendant May because

he lacks the authority to affect the terms and conditions of her employment. (*Id.* at PageID.122). In addition to its motion to dismiss, Defendants also moved for a more definite statement as to Ray's Title VII retaliation claim and her disparate treatment claim under ELCRA. (ECF No. 9, PageID.116–17, 123–24).

According to Ray, her hostile work environment claim is corroborated by witnesses and meets the severe and pervasive standard required for such claims. (ECF No. 11, PageID.149–51). Ray also argued that May's status as her co-worker does not necessarily bar an ELCRA retaliation claim against him. (*Id.* at PageID.151). And Ray sufficiently pled her claims, so a more definite statement is not needed. (*Id.* at PageID.151–53). Ray otherwise concurred that her ELCRA claims are subject to Michigan's six-month notice requirement and any claims prior to the deadline must be dismissed. (*Id.* at PageID.151).

For the reasons explained below, the Court will grant in part and deny in part the Defendants' motion.

### A. Ray Did Not Sufficiently Allege Her Hostile Work Environment Claim.

Regardless of whether Ray sufficiently alleged severe and pervasive harassment, Ray's failure to tie the alleged harassment to her race or gender warrants dismissal of this claim. A plaintiff is not required to plead facts establishing a prima facie case of a hostile work environment at the motion to dismiss stage. *Bell v. Dollar*

*Tree, Inc.*, No. 24-13259, 2025 WL 3252656, at *10 (E.D. Mich. Nov. 21, 2025). Instead, a court need only consider whether the complaint alleged "sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference" that the plaintiff was subjected to a hostile work environment. *Bruce v. Adams and Reese, LLP*, 168 F. 4th 367, 376–77 (6th Cir. 2026) (citation omitted) (quotation modified). A hostile work environment exists "'[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* at 377 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

To qualify as sufficiently severe and pervasive, the harassment must meet an objective and subjective standard. *Bell*, 2025 WL 3252656, at *10. That is, the plaintiff must establish that the harassment amounted to a hostile or abusive working environment "'both to the reasonable person and the actual victim.'" *Id.* (quoting *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2017)). "Additionally, to adequately plead a hostile work environment claim under Title VII, a plaintiff must allege that she is a member of a protected class and that the harassment was based" on that protected class. *Bell*, 2025 WL 3252656, at *10 (citation omitted).

Here, Ray did not tie the harassment she faced to her race or gender. The Court therefore cannot infer that the hostile work environment stemmed from her protected class. So even if Ray alleged severe and pervasive conduct, Ray did not establish a Title VII violation. Ray's failure to address this argument in her response serves as an implicit acknowledgement of the shortcomings of her claim. Thus, the Court will dismiss Count I.

**B. The Court Will Dismiss Any Claims Not Raised Before Michigan's Six-Month Notice Deadline.**

"For a claim against this state for property damage or personal injuries, the claimant shall file the claim or notice . . . within 6 months after the event that gives rise to the claim." Mich. Comp. Laws § 600.6431(d)(4). Ray concurred in Defendants' argument that the six-month deadline applies here and that it forecloses any claims not raised within six months after the cause of action occurred. (ECF No. 11, PageID.151). Thus, the Court need not address Defendants' argument or Defendants' supplemental briefing. (ECF No. 9, PageID.117–22; ECF No. 13, PageID.194). The Court will dismiss any claims not raised prior to Michigan's six-month notice deadline for claims against the state.

**C. Ray's Retaliation Claim Against May Will Survive Dismissal.**

Defendants argued that Ray cannot bring a retaliation claim against May under ELCRA because he was only her co-worker and lacked authority over the

terms of Ray's employment. (ECF No. 9, PageID.122). The Court is not convinced. Michigan law makes it illegal to "[r]etaliate or discriminate against a person because the person has opposed a violation of [ELCRA], or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation proceeding, or hearing under this act." Mich. Comp. Laws § 37.2701(a). The statute also makes clear that a person can violate ELCRA if they "[a]id, abet, incite, compel, or coerce a person to engage in a violation of this act." § 37.2701(b). Further, "'[t]here is no language [in MCL 37.2701] that could conceivably be interpreted as limiting an action for retaliation under the [EL]CRA against only an employer.'" *City of Wayne v. Miller*, 351 Mich. App. 538, 553 (2024) (quoting *Rymal v. Baergan*, 262 Mich. App. 274, 297 (2004)). Accordingly, the Court finds that May could be held liable for retaliation even without a supervisory role, so long as he aided and abetted the ELCRA violation. Thus, Defendants' argument fails, and the Court will not dismiss the claim on this basis.

### D. The Court Will Deny Defendants' Motion for a More Definite Statement.

To start with, a more definite statement is not required to establish a causal connection between the alleged discipline and Ray's retaliation claim. As mentioned, courts disfavor motions for a more definite statement. "[I]f the moving party is able to discharge her pleading obligations under the rules, a Rule 12(e)

motion based on the belief that a better affirmative pleading by the opposing party will enable her to provide a more enlightening or accurate response will be denied." Wright & Miller, *supra*, § 1377.

Here, Defendants claimed that Ray did not allege sufficient information for Defendants to "ascertain whether a causal connection exists under her Title VII – Retaliation claim." (ECF No. 9, PageID.116). That is, because Ray did not indicate when the discipline she experienced occurred, MDOC cannot establish whether a temporal proximity exists between Ray's filing of her EEOC complaint and the discipline. (*Id.* at PageID.116–17). But in her amended complaint, Ray stated that the retaliation "intensified" *after* she filed an EEOC charge, and she presented her removal from the Recruitment Team as the primary consequence. (ECF No. 8, PageID.53). At the pleading stage, this is enough to establish causation; Ray met her burden under Rule 8(a)(2) to set forth a "short and plain statement of the claim" showing she is entitled to relief. Defendants do not need specific dates at this time since that "evidentiary detail . . . is more properly the subject of discovery." *Compuware Corp. v. Int'l Bus. Machs.*, 259 F. Supp. 2d 597, 600 (E.D. Mich. 2002).

The same is true for Ray's disparate treatment claim under ELCRA. Ray alleged that she was treated differently than similarly situated white male officers. (ECF No. 8, PageID.56). Ray offered specific examples of how she was treated differently. (*Id.* at PageID.52). First, Ray was subject to public questioning

regarding her medical accommodation. (*Id.*). Second, she was challenged in front of staff about her credibility. (*Id.*).

Defendants cited case law resolving summary judgment issues to show that Ray insufficiently pled her ELCRA disparate treatment claims, (ECF No. 9, PageID.123). *See Town v. Mich. Bell. Tel. Co.*, 455 Mich. 688 (1997); *Loper v. Comput. Network Tech. Corp.*, 128 F. Supp. 2d 1061 (E.D. Mich. 2001). But the summary judgment standard is different, and more exacting, than that here; accordingly, the Court finds that Ray's complaint contained enough information for Defendants to "frame a responsive pleading." Wright & Miller, *supra*, § 1377. Namely, Ray made a comparison to those outside her protected class (white male corrections officers) and explained how she was treated differently. The Court finds that sufficient for now. Thus, the request for a more definite statement as to the Title VII retaliation claim and the ECLRA claim is denied.

* * *

For the reasons given, the Court **ORDERS** that the motion for partial dismissal (ECF No. 9) is **GRANTED IN PART AND DENIED IN PART**.

Dated: September 4, 2026

s/Robert J. White
Robert J. White
United States District Judge